**So Ordered.**

**Dated: January 20th, 2021**



Frederick P. Corbit
Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| In re: | Case No. 16-03109-FPC11 |
|---|---|
| ROYAL COACHMAN MOBILE HOME PARK, LLC | **FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER APPROVING TRUSTEE'S PROPOSED SALE** |
| Debtor. | |

THIS MATTER came before the Court on (1) Motion to Sell Property Free and Clear of Liens filed by the Chapter 11 Trustee (ECF No. 397); (2) Motion to Reconsider filed by the Estate of Darla Turner and Shannon Burns[1] (ECF No. 416); and (3) Motion to Sell Property Free and Clear of Liens and Motion to Shorten Time filed by Ms. Burns (ECF No. 426). The Court reviewed the files and records herein, including all related objections, declarations, responses and replies. On January 6, 2021, the Court heard argument of the parties and testimony from

---

[1] For brevity, this order will refer to these two parties as "Ms. Burns."

**FINDINGS OF FACT RE PROPOSED SALE**– Page 1

Victoria O'Banion, a representative from prospective purchaser Northwest Cooperative Development Center, and after being fully advised of the premises, makes the following findings of fact, conclusions of law and order:

## FINDINGS OF FACT[2]

1. Royal Coachman Mobile Home Park, LLC, operates a mobile home park in Grant County, Washington. The mobile homes in the park are owned by the tenants, who rent individual spaces. The park has 57 spaces. (ECF No. 49)

2. On April 14, 2016, the tenants of the park entered into a consent decree with Ms. Burns, settling a class action lawsuit captioned *Amado v. In Re the Estate of Darla May Turner, Shannon Burns, and Royal Coachman Mobile Home Park, LLC,* Grant County Superior Court Cause No. 15-2-00501-1. (ECF Nos. 79, 80) The consent decree prohibited certain acts by the defendants and instituted certain protections for the tenants including provisions related to rental agreements, utilities, and rent increases. (ECF No. 77)

3. On October 3, 2016, Royal Coachman Mobile Home Park, LLC petitioned for bankruptcy protection under Chapter 11. (ECF No. 1) Schedule A of the petition valued the Royal Coachman assets at $1,524,000. (ECF No. 25) The Disclosure Statement indicated that the fixed value of the Royal Coachman mobile

---

[2] Where a finding of fact is a conclusion of law, it shall be treated as such and vice versa.

**FINDINGS OF FACT RE PROPOSED SALE**– Page 2

home park based upon the location, number of trailer spaces, rent, park improvements and cost to operate was a gross fixed value of $1,500,000. (ECF No. 125)

    4.    After the United States Trustee twice moved to dismiss or convert the case to a Chapter 7,[3] on January 9, 2020, the Court found that just cause existed to appoint a post-Chapter 11 trustee to operate debtor's business. The Court entered an Agreed Order[4] that stated in part:

> John Munding is hereby appointed as the post-Chapter 11 confirmation trustee with authority to operate the debtor's business and carry out the terms of the confirmed Amended Plan of Reorganization, and is vested with all decision making powers concerning operation of the debtor's business.

(ECF No. 368)

    5.    The Chapter 11 Trustee determined that funding the Plan through continued business operations was not reasonable or feasible due to operations and expenses, maintenance issues, insurance concerns, and federal tax liabilities. (ECF No. 397)

    6.    The Chapter 11 Trustee conducted due diligence concerning the feasibility of marketing and selling the Mobile Home Park.

---

[3] ECF Nos. 294; 328.
[4] The Agreed Order was signed by Nancy Isserlis and Joachim Morrison, counsel for creditors Amado, et al.; Daniel O'Rourke, counsel for Debtor Royal Coachman Mobile Home Park, LLC; and Gary Dyer, Assistant United States Trustee.

**FINDINGS OF FACT RE PROPOSED SALE**– Page 3

7. Prior to employing a real estate broker, the Trustee received an offer to purchase the mobile home park from Northwest Cooperative Development Center, "as is," with no warranties other than warranty of title. (ECF No. 397)

8. On October 10, 2020, Trustee Munding filed a Motion for Order Authorizing Sale of Mobile Home Park Free and Clear of Liens ("Trustee's Proposed Sale"). (ECF No. 397)

9. The Trustee's Proposed Sale requested authorization to sell the mobile home park to purchaser Northwest Cooperative Development Center, a Washington Nonprofit corporation, for a price of $1,400,000, with earnest money of $10,000. No real estate brokerage commission was to be paid.

10. The Chapter 11 Trustee stated the price was reasonable, the sale was negotiated at arm's length, and the offer was "fair, reasonable, and in the best interest of the Estate and its creditors." (ECF Nos. 397, 406) The Trustee asserted that the offer constituted the highest and best offer and would provide a greater recovery for the estate than continuing operations at the park.

11. After notice and a hearing on November 10, 2020, the Court entered an Order Authorizing the Sale and Transfer of Estate Property on November 18, 2020. (ECF No. 415) The Order stated the approval of the sale to Northwest Cooperative Development Center would be effective as of December 15, 2020, but the Court would allow additional marketing of the property and solicitation

**FINDINGS OF FACT RE PROPOSED SALE**– Page 4

of offers until December 14, 2020. Additional offers were to be submitted to the Chapter 11 Trustee by December 14, 2020 at 4:00 p.m., and a hearing related to any such offers would be held on December 15, 2020.

12. On December 3, 2020, Ms. Burns filed a motion to reconsider the Order Authorizing the Sale. (ECF No. 416) In part, Ms. Burns objected to the Order allowing the Chapter 11 Trustee to sell the mobile home park because the Plan did not explicitly provide the Trustee with the authority to sell the property.

13. On December 15, 2020, Nancy Isserlis, counsel for Fernan Amado and the related class plaintiffs and park creditors/tenants, orally moved to amend the Plan to add explicit language authorizing the Chapter 11 Trustee to sell the mobile home park. (ECF No. 425) Ms. Burns objected. (ECF No. 437)

14. While the Plan contained provisions allowing for the sale of estate property by the Debtor under certain circumstances, the Plan did not specifically grant authority to the Trustee to sell the property, because trustee involvement was not anticipated when the First Amended Plan was proposed. However, language in the Plan allowed both the Debtor and creditors to propose modifications to the manner of liquidation proposed in the Plan.

15. The Plan provided the Court with the authority to enforce and interpret the Plan and to approve proposed modifications to the manner of liquidation proposed in the Plan.

16. On December 31, 2020, sixteen days after the Court's deadline to submit purchase offers to the Chapter 11 Trustee, Ms. Burns filed a Motion to Sell Property Free and Clear of Liens to Hurst & Sons, LLC, ("the Burns Sale Proposal") along with a motion to shorten time. (ECF No. 426)

17. The terms of the Burns Sale Proposal included a purchaser, Hurst & Sons, LLC, that owns and operates multiple mobile home parks in Washington, a purchase price of $2,000,000, down payment of $200,000, earnest money of $50,000, broker fee of four percent, seller financing over ten years, interest only payments based upon a 30-year amortization at four percent per annum, and no warranties. (ECF No. 427, Ex. A)

18. The Chapter 11 Trustee objected to the Burns Sale Proposal because, among other reasons, the proposed offer was not "higher and better" than the pending cash offer from Northwest Cooperative Development Center. (ECF No. 442) The Trustee specified that among other reasons to object, multiple unpaid claims against the estate still existed; the sale would trigger a significant capital gains tax liability; the estate still owed several years of income tax (each year's liability estimated between $53,000 and $60,000); the interest rate proposed

**FINDINGS OF FACT RE PROPOSED SALE**– Page 6

was far below private financing market rate of six to twelve percent, with an additional loan fee of two to four percent; interest only payments are not routine or provided in the normal course of private financing, and the standard loan fees for private financing are between two and four points. The Chapter 11 Trustee concluded that the Burns Sale Proposal was not a prudent business decision, was not financially feasible, created unnecessary risk to the estate, and could not be consummated. (ECF No. 442)

19. Counsel for Ms. Burns filed a supplemental declaration that indicated the terms of the Burns Sale Proposal were modified to: increase the purchase price to $2,100,000; increase the down payment to $325,000; shorten the term of the Seller's financing to two years; decrease the interest rate to 3.65 percent; and provided for monthly payments during the two-year period amortized over 30 years, in the amount of approximately $8,006. Alternatively, the proposed purchaser was willing to pay $2,000,000 subject to obtaining financing. (ECF No. 444)

20. On January 4, 2021, Fernan Amado and the related class plaintiffs who are creditors and parties to the 2016 consent decree with Ms. Burns, objected to the Burns Sale Proposal, stating "the proposed sale and financing terms are illusory and not in the best interests of the creditors of the estate." (ECF No. 439)

**FINDINGS OF FACT RE PROPOSED SALE**– Page 7

21. Also on January 4, 2021, the Chapter 11 Trustee objected to Ms. Burns' Motion to Reconsider on the basis that the argument was untimely and without factual basis. (ECF No. 434)

22. On January 6, 2021, the Court heard argument on the Trustee's Proposed Sale, the Burns Sale Proposal and the attendant motion to shorten time, the Reconsideration Motion and the oral motion to amend the Plan. (ECF No. 448) At that hearing, the Court heard sworn testimony from Victoria O'Banion, Marketing and Acquisitions Specialist for Northwest Cooperative Development Center.

23. Ms. O'Banion testified that Northwest Cooperative Development Center is a national affiliate nonprofit that, in part, provides acquisition funding for resident-owned mobile home park community programs. The Center has a funding source that has authorized the purchase of the Royal Coachman mobile home park "at 100 percent value." The Center has successfully developed 280 parks under the tenant-owned model, and none of its acquisitions have failed to form a tenant group. Ms. O'Banion also testified that the Center's sales typically close "on time," within 120 days.

24. Ms. O'Banion's testimony was credible.

25. On January 13, 2021, the Court entered an order granting counsel for Fernan Amado and the related class plaintiffs' oral motion to amend the Plan. (ECF No. 456).

26. This Court finds no cogent reason to disagree or interfere with the Trustee's judgment regarding the sale of the mobile home park. The Trustee concluded that the Northwest Cooperative Development Center's purchase proposal was the most advantageous to the estate, basing his decision on a totality of relevant considerations, including the dollar amount offered. The Trustee carefully weighed the competing bids rather than mechanistically recommending the facially higher bid. Not only has the Trustee used reasonable business judgment in selecting the Center purchase offer, he convincingly articulated the reasons for recommending this proposed sale.

27. The sale to the Northwest Cooperative Development Center is just and equitable, furthers the interests of the debtor, creditors and equity holders, and will provide the greatest overall benefit for the estate.

28. The Chapter 11 Trustee's judgment is reasonable and sound business justifications exist that support the Trustee's Proposed Sale and its terms.

## CONCLUSIONS OF LAW

1. The Chapter 11 Trustee was duly appointed in this case.

2. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may ... sell ..., other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Also, a trustee may sell property "free and clear of any interest" in the estate property. 11 U.S.C. § 363(f).

3. The sale of estate property under the Bankruptcy Code is conducted by a trustee, who "has ample discretion to administer the estate, including authority to conduct public or private sales of estate property." *In re WPRV–TV, Inc.*, 143 B.R. 315, 319 (D.P.R.1991), aff'd in part, rev'd in part, 983 F.2d 336 (1st Cir.1993), *accord In re Canyon Partnership*, 55 B.R. 520, 524 (Bankr.S.D.Cal.1985).

4. In deciding whether to approve a proposed sale under section 363, courts generally apply standards that, although stated various ways, represent essentially a business judgment test. Recent cases typically inquire "whether a sale is supported by a sound business reason and is based on a sound exercise of business judgment." 3 COLLIER ON BANKRUPTCY § 363.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013).

5. The bankruptcy court reviews the trustee's business judgment to determine independently whether the judgment is reasonable. "The court should not substitute its judgment for the trustee's but should determine only whether

**FINDINGS OF FACT RE PROPOSED SALE**– Page 10

the trustee's judgment was reasonable and whether a sound business justification exists supporting the sale and its terms." 3 COLLIER ON BANKRUPTCY § 363.02.

6. "Although a trustee normally would be expected to sell to the highest bidder at an auction, there may be sound business reasons to accept a lower bid, particularly in a negotiated sale." 3 COLLIER ON BANKRUPTCY § 363.02.

7. Although a trustee's business judgment enjoys judicial deference, this discretion is not without limit. A duty is imposed upon the trustee to maximize the value obtained from a sale. *See, e.g., In re S.N.A. Nut Co.*, 186 B.R. 98, 104 (Bankr.N.D.Ill.1995) ("When a debtor or trustee conducts a sale under § 363(b), it has an obligation to maximize revenues for the estate."); *In re Mondie Forge, Inc.,* 148 B.R. 499, 502 (Bankr.N.D.Ohio 1992) ("[T]he trustee has a duty to realize the maximum return for the estate for further distribution to the Debtor's creditors.").

8. A trustee must seek to avoid undue risk, particularly when dealing with money of the estate. See 11A SCOTT ON TRUSTS § 174, at 468 (4th ed.1987) (a trustee has a duty to preserve the estate and must use "caution that may be greater than that of a prudent man who is dealing with his own property.")

**FINDINGS OF FACT RE PROPOSED SALE**– Page 11

16-03109-FPC11    Doc 458    Filed 01/20/21    Entered 01/20/21 12:27:31    Pg 11 of 13

9. A bankruptcy court is generally afforded wide latitude in deciding whether to grant or deny approval of estate asset sales. *See In re WPRV–TV, Inc.*, 983 F.2d 336, 340 (1st Cir.1993); *In re Chung King,* 753 F.2d 547, 549 (7th Cir. 1985).

10. In appropriate circumstances it is proper for a court to interfere with the trustee's judgment "for the purpose of safeguarding the interest of parties concerned, such as creditors and bidders." *In re Blue Coal Corp.*, 59 B.R. 157, 163 (Bankr.M.D.Pa.1986); *see also G–K Dev. Co. v. Broadmoor Place Invs., L.P.* (*In re Broadmoor Place Invs., L.P.*), 994 F.2d 744, 745 (10th Cir.1993) (approving the sale to an alternate bidder that was not recommended by the trustee).

11. A bankruptcy trustee is a conservator of the estate and must, to the extent possible, be risk averse. In this case, the Chapter 11 Trustee declined the temptation of endorsing a facially higher sale price that could expose the estate to a much greater risk of, among other things, a failed closing. In light of all the circumstances including the details of each offer, the Trustee has provided sound business reasons to favor the offer from Northwest Cooperative Development Center over the Burns Proposed Offer, and the Trustee's judgment is reasonable.

**FINDINGS OF FACT RE PROPOSED SALE**– Page 12

# **ORDER**

Accordingly, the Court ratifies the Trustee's recommendation and approves the sale to Northwest Cooperative Development Center.

IT IS ORDERED:

1. Motion to Sell Property Free and Clear of Liens filed by the Chapter 11 Trustee (ECF No. 397) is **GRANTED;**

2. The Motion to Reconsider filed by the Estate of Darla Turner and Shannon Burns (ECF No. 416) is **DENIED;**

3. The Motion to Shorten Time related to the Motion to Sell Property Free and Clear of Liens (ECF No. 426) is **GRANTED;** and

4. The Motion to Sell Property Free and Clear of Liens filed by the Estate of Darla Turner and Shannon Hunter Burns (ECF No. 426) is **DENIED.**

///End of Order///